[Cite as *State v. Quinn*, 2022-Ohio-2038.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                                  No. 110692

    v.                                  :

DWIGHT QUINN,                           :

    Defendant-Appellant.         :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 16, 2022

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CR-19-640694-B, and CR-19-643021-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Timothy Troup and Eben McNair, Assistant Prosecuting Attorneys, *for appellee*.

Mary Catherine Corrigan, *for appellant*.

LISA B. FORBES, J.:

{¶ 1} Dwight Quinn ("Quinn") appeals his convictions for several felonies associated with a February 2019 kidnapping and robbery, as well as a police chase that occurred in May 2019, when authorities attempted to take Quinn into custody.

After reviewing the facts of the case and pertinent law, we affirm the trial court's judgment.

## I.  Facts and Procedural History

{¶ 2}  On February 21, 2019, Edward Gibson ("Gibson") was robbed at gunpoint by three men while in his car in Euclid.  These men tied Gibson's hands behind his back, duct taped his face, and drove him to an abandoned house in Cleveland.  DNA and cellular phone data evidence led the police to Quinn and William Shields ("Shields"), and arrest warrants were issued.  The United States Marshals Violent Fugitive Task Force located Quinn and attempted to arrest him on May 31, 2019.  A high-speed chase ensued, and Quinn's vehicle collided into several other vehicles, resulting in injuries to two people.  Ultimately, the authorities detained Quinn.

{¶ 3}  On June 10, 2019, in Cuyahoga C.P. No. CR-19-640694-B, Quinn was charged with aggravated robbery and kidnapping, each with firearm, notice of prior conviction, repeat violent offender, and forfeiture specifications; grand theft; and having weapons while under disability with forfeiture specification in connection with the February 21, 2019 events.  This indictment also charged Shields with various related felonies.

{¶ 4}  On August 20, 2019, in Cuyahoga C.P. No. CR-19-643021-A, Quinn was charged with aggravated vehicular assault and failure to comply for the events that occurred on May 31, 2019.

{¶ 5} On November 1, 2019, the court granted the state's motion for joinder regarding both aforementioned indictments. The charges against Quinn were renumbered as follows:

Count 1 — Aggravated robbery, a first-degree felony, in violation of R.C. 2911.01(A)(1) with firearm, notice of prior conviction, and repeat violent offender specifications.

Count 2 — Kidnapping, a first-degree felony, in violation of R.C. 2905.01(A)(2) with firearm, notice of prior conviction, and repeat violent offender specifications.

Count 3 — Grand theft, a fourth-degree felony, in violation of R.C. 2913.02(A)(1) with firearm, notice of prior conviction, and repeat violent offender specifications.

Count 4 — Aggravated vehicular assault, a third-degree felony, in violation of R.C. 2903.08(A)(2) with a furthermore clause that Quinn was driving under suspension.

Count 5 — Failure to comply, a third-degree felony, in violation of R.C. 2921.331 with a furthermore clause that the violation caused serious physical harm.

Count 7 — Having weapons while under disability, a third-degree felony, in violation of R.C. 2923.13(A)(2) with a forfeiture specification.

{¶ 6} On May 27, 2021, a jury found Quinn guilty of aggravated robbery with a one-year firearm specification, kidnapping with a one-year firearm specification, grand theft, aggravated vehicular assault with the furthermore clause, and failure to comply with the furthermore clause. The court found Quinn guilty of the notice of prior conviction, repeat violent offender, and forfeiture specifications, as well as having a weapon while under disability.

{¶ 7} On June 28, 2021, the court sentenced Quinn to an aggregate term of 13 years in prison. It is from these convictions that Quinn appeals.

## II. Law and Analysis

### A. Motion for Joinder

{¶ 8}  In his first assignment of error, Quinn argues that the court erred by granting the state's motion for joinder and trying his two cases together.

{¶ 9}  Under Crim.R. 8(A), "[t]wo or more offenses may be charged in the same indictment * * * if the offenses charged * * * are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct."  This court has held that Crim.R. 8(A) allows indictments to be joined together for a single trial.  *State v. Shine,* 2018-Ohio-1972, 113 N.E.3d 160, ¶ 28 (8th Dist.).  *See also* Crim.R. 13.  The Ohio Supreme Court has held that joinder "is liberally permitted to conserve judicial resources, reduce the chance of incongruous results in successive trials, and diminish the inconvenience to the witnesses."  *State v. Schaim*, 65 Ohio St.3d 51, 58, 600 N.E.2d 661 (1992).

{¶ 10}  Crim.R. 14 allows for severance of properly joined offenses if the defendant can show prejudice.  "If it appears that a defendant * * * is prejudiced by * * * joinder for trial together of indictments * * *, the court shall order * * * separate trial[s] of [the] counts * * *."  *Id.*  "The defendant * * * bears the burden of proving prejudice and of proving that the trial court abused its discretion in denying severance."  *State v. Brinkley*, 105 Ohio St.3d 231, 2005-Ohio-1507, 824 N.E.2d 959, ¶ 29.  "While there is always the possibility of prejudice from joinder of offenses, once the state has concluded its case, the defendant bears the burden of

demonstrating actual prejudice from the joinder." *State v. Cisternino*, 8th Dist. Cuyahoga No. 66387, 1994 Ohio App. LEXIS 4856 (Oct. 27, 1994).

{¶ 11} The state can refute a defendant's claim of prejudice one of two ways: "(1) a showing that the evidence of each crime is simple and direct or (2) evidence of the other crimes would be admissible even if the counts were severed." *State v. Williams*, 8th Dist. Cuyahoga No. 108275, 2020-Ohio-269, ¶ 79. "A defendant is therefore not prejudiced by joinder when simple and direct evidence exists, regardless of the admissibility of evidence of other crimes under Evid.R. 404(B)." *State v. Peterson*, 8th Dist. Cuyahoga Nos. 100897 and 100899, 2015-Ohio-1013, ¶ 66.

{¶ 12} Generally, "[w]e review the trial court's ruling on joinder for an abuse of discretion." *State v. Lee*, 8th Dist. Cuyahoga No. 104682, 2017-Ohio-1449, ¶ 15. However, in *State v. Owens*, 51 Ohio App.2d 132, 366 N.E.2d 1367 (9th Dist.1975) paragraph two of the syllabus, the court held that a "motion for severance due to prejudicial misjoinder * * * must be renewed at the close of the state's case or at the conclusion of all the evidence and unless made at that time, it is waived."

{¶ 13} This court has applied *Owens* to the joinder of two criminal indictments. *See, e.g., State v. Frazier*, 8th Dist. Cuyahoga Nos. 106772 and 106773, 2019-Ohio-1433, ¶ 11 ("to properly preserve the issue of a trial court's joinder of indictments for appeal, the defendant must object to the joinder of indictments at the time of trial, and at the close of the state's case or at the close of evidence."). Failure to renew an objection under these circumstances waives all but plain error.

"An error does not constitute plain error unless, but for the error, the outcome of the trial clearly would have been otherwise." *State v. Hill*, 8th Dist. Cuyahoga No. 95379, 2011-Ohio-2523, ¶ 9.

{¶ 14} In the instant case, the trial court joined, over Quinn's opposition, his two indictments for one trial. Quinn did not expressly renew his objection after the hearing on the state's motion for joinder. Therefore, we review the trial court's joinder of Quinn's indictments for plain error.

{¶ 15} In CR-19-640694-B, Quinn was charged with aggravated robbery, kidnapping, grand theft, and having weapons while under disability for events that occurred in February 2019. In CR-19-643021-A, Quinn was charged with aggravated vehicular assault and failure to comply for events that occurred in May 2019, when law enforcement officers were executing Quinn's arrest warrant for the crimes charged in CR-19-640694-B.

{¶ 16} This court addressed a similar fact pattern involving alleged crimes committed on one date followed by a failure to comply committed on a subsequent date in *Cisternino*, 8th Dist. Cuyahoga No. 66387, 1994 Ohio App. LEXIS 4856. This court found that the trial court did not err by denying the defendant's motion to sever.

{¶ 17} Cisternino was charged in one indictment with "seven counts related to events occurring on June 25, 1991 and two counts for events occurring on July 1, 1991." *Id*. A jury acquitted Cisternino on the seven counts relating to the June incident and found him guilty of drug abuse and failure to comply regarding the July

incident. *Id.* On appeal, Cisternino argued that the trial court abused its discretion by denying his motion to sever the counts regarding the June incident from the counts concerning the July incident. *Id.*

{¶ 18} This court found that Cisternino failed to show prejudice under Crim.R. 14. The "charges for drug law and failure to comply with a lawful police order were interrelated in that he committed those offenses when the police executed the arrest warrant for the charges occurring on June 25. Defendant's flight may well have been probative of guilt on the June 25th charges." *Id.* This court further explained that a "sufficient nexus between the drug law violation and the failure to comply with a lawful order existed to join those counts to the June 25 counts. * * * Joinder of the July 1 offenses with those of June 25 promoted the public policy of conservation of judicial economy, with no demonstrable prejudice to defendant." *Id.*

{¶ 19} Upon review of the facts in the case at hand, we find that under Crim.R. 8(A), the offenses charged in both of Quinn's indictments constitute "two or more acts or transactions connected together." Specifically, Quinn failed to comply and committed aggravated vehicular assault — the offenses in the second indictment — as the authorities were executing the arrest warrant issued in conjunction with the offenses in the first indictment.

{¶ 20} On appeal, Quinn argues that "the jury was prohibited from making a fair and impartial decision," claiming that joinder unfairly prejudiced him. In support, Quinn asserts only that "there were no common facts, or victims." In doing

so, he did not demonstrate that joinder prohibited the jury from doing its job. Applying the sound reasoning in *Cisternino* we find that Quinn failed to show actual prejudice. Because Quinn failed to show prejudice, we decline to analyze whether the state refuted Quinn's claim.

{¶ 21} Accordingly, we find no plain error in the trial court's joinder of Quinn's two indictments. Quinn's first assignment of error is overruled.

## B. Speedy Trial Rights

{¶ 22} In his second assignment of error, Quinn argues that the trial court erred by failing to dismiss his case because his speedy trial rights were violated. According to Quinn, 719 days passed from his arrest to his trial, and, although he concedes that his statutory right to a speedy trial under R.C. 2945.71 was not violated, he argues that his constitutional right to a speedy trial was violated.

{¶ 23} "Review of a speedy-trial claim involves a mixed question of law and fact. Therefore, we defer to the trial court's factual findings if they are supported by competent credible evidence, but we review the application of the law to those facts de novo." *State v. Long*, 163 Ohio St.3d 179, 2020-Ohio-5363, 168 N.E.3d 1163, ¶ 15. In the case at hand, on January 15, 2021, the court denied Quinn's motion to dismiss for violation of speedy trial rights without making any factual findings.

{¶ 24} The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial * * *." This fundamental right is imposed on the states by the Fourteenth Amendment to the United States Constitution. *Klopfer v. N. Carolina*, 386 U.S. 213,

87 S.Ct. 988, 18 L.Ed.2d 1 (1967).  *See also* Ohio Constitution, Section 10, Article I. This Sixth Amendment guarantee "is an important safeguard to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself."  *United States v. Ewell*, 383 U.S. 116, 120, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966).

{¶ 25} "To determine whether an accused has been denied his or her constitutional right to a speedy trial, a court must consider the following four factors:  (1) the length of the delay, (2) the reason for the delay, (3) the accused's assertion of his or her right to a speedy trial, and (4) the prejudice to the accused as a result of the delay."  *State v. Robinson*, 8th Dist. Cuyahoga No. 105243, 2017-Ohio-6895, ¶ 8, citing *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

### 1. Length of Delay

{¶ 26} Quinn was arrested on May 31, 2019, and Quinn's trial began on May 19, 2021.  Quinn argues that 719 days passed, and the state does not dispute this.

### 2. Reason for Delay

{¶ 27} Our review of the trial court's docket shows that, from June 21, 2019, through December 2019, Quinn requested multiple continuances to conduct discovery, and he filed multiple pro se motions.

{¶ 28} On December 13, 2019, Quinn requested another continuance to reschedule his trial "after [his] arraignment in federal court." According to the December 13, 2019 journal entry, "both state and defense agree that no speedy trial issues exist." From this time through April 2020, Quinn requested multiple times that "the trial date in the instant matter be scheduled after defendant's federal trial date of 04/27/2020,"[1] and the court granted these continuances.

{¶ 29} From April 30, 2020, through September 2020, the court issued multiple continuances "due to the stay at home lock down mandated by the state of Ohio and in an effort to reduce community spread of Covid-19 * * *."

{¶ 30} On September 28, 2020, Quinn waived his speedy trial rights through January 31, 2021, in writing and in open court.

{¶ 31} From January 2021, through May 2021, the court continued Quinn's trial multiple times "due to the Covid-19 pandemic and administrative order of the administrative judge * * * that jury trials are suspended * * *."

{¶ 32} Quinn's trial commenced on May 19, 2021.

### 3. Assertion of Right

{¶ 33} On September 16, 2020, Quinn filed a motion to dismiss for speedy trial violations. On September 28, 2020, Quinn filed a pro se (despite being represented by counsel) "Notice to deny consent to any continuances 'at the request of the defendant and move this court to set immediate trial date' (speedy trial

---

[1] The court identified Quinn's federal case in several journal entries as "federal case no. 1:19-CR-00738."

invocation)." As noted previously, on that same date, Quinn also waived his speedy trial rights through January 31, 2021.

### 4. Prejudice to Defendant

{¶ 34} On appeal, Quinn argues that "the prejudice in this matter is clear: a criminal defendant who has spent two (2) years' incarceration prior to his trial, over a year of which was occurring during a global pandemic is not afforded the same abilities to assist in his own defense as a bail defendant tried quickly after the incident."

{¶ 35} Ohio courts have held that "[p]rejudice to the defense is the 'most serious' interest protected by the speedy-trial right, yet it is often difficult to prove." *State v. Muhammadel*, 1st Dist. Hamilton No. C-190683, 2021-Ohio-567, ¶ 30. In lieu of showing actual prejudice, a defendant can show presumptive prejudice, which focuses "on the culpability of the state in failing to bring the defendant to trial." *Id.* at ¶ 31. The United States Supreme Court has recognized that presumptive prejudice generally involves "excessive delay." *Doggett v. United States*, 505 U.S. 647, 655, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992).

{¶ 36} We acknowledge that a two-year delay between arrest and trial is lengthy. However, we cannot say that it is excessive in light of the Covid-19 pandemic that has affected and essentially delayed everyone's life starting in the spring of 2020. Furthermore, Quinn requested numerous continuances of his trial, including waiving his speedy-trial rights at times, most notably in light of his pending case in federal court. Additionally, the record does not reveal any lengthy

delay attributed to the state in this case. Accordingly, after weighing all four of the *Wingo* factors, we find that Quinn's constitutional right to a speedy trial was not violated, and his second assignment of error is overruled.

## C. Evidence Rule 404(B) — Detective Carpenter's Testimony

{¶ 37} In his third assignment of error, Quinn argues that the court erred by failing to grant a mistrial "after Det. Carpenter spontaneously testified to impermissible Evid.R. 404(B) evidence." Specifically, Quinn takes issue with a detective's testimony regarding Quinn's "lengthy and violent criminal history."

{¶ 38} "The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." *State v. Sage*, 31 Ohio St.3d 173, 180, 510 N.E.2d 343 (1987). Pursuant to Evid.R. 401, relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Relevant evidence is not admissible, however, "if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 403(A). "Where evidence has been improperly admitted in derogation of a criminal defendant's constitutional rights, the admission is harmless 'beyond a reasonable doubt' if the remaining evidence alone comprises 'overwhelming' proof of defendant's guilt." *State v. Williams*, 6 Ohio St.3d 281, 290, 452 N.E.2d 1323 (1983).

{¶ 39} Pursuant to Evid.R. 404(B), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in

conformity therewith." According to the Ohio Supreme Court, "[t]his type of evidence is commonly referred to as 'propensity evidence' because its purpose is to demonstrate that the accused has a propensity or proclivity to commit the crime in question." *State v. Hartman*, 161 Ohio St.3d 214, 2020-Ohio-4440, 161 N.E.2d 651, ¶ 21.

{¶ 40} In the instant case, Euclid Police Detective Dave Carpenter ("Det. Carpenter") testified that he is "assigned full-time as a deputy U.S. marshal for the Northern Ohio Violent Fugitive Task Force." In May 2019, he was "asked to attempt to locate Mr. Quinn." On May 31, 2019, he received information of Quinn's location in Cleveland. Det. Carpenter, along with other law enforcement agents, attempted to apprehend Quinn as he was getting into the driver's seat of a car, but Quinn "put the car in gear and intentionally struck" one of the agent's vehicles. A high-speed chase ensued, and Quinn's vehicle struck several other vehicles.

{¶ 41} During Det. Carpenter's cross-examination, defense counsel asked about the procedure when "you're trying to take down somebody," and Det. Carpenter answered as follows:

> With the job, task force, yeah, I mean typically again going after violent people, violent criminal histories we obviously know who they are when we're going after them because they have a warrant in this case, a criminal history, knew it was a lengthy violent criminal history, so we always approach with caution and typically have weapons out. Sometimes you know might even have a rifle. In this case we did not but a lot of times we have a rifle also.

{¶ 42} As stated previously, Quinn's concern on appeal is Det. Carpenter's reference to Quinn's "lengthy violent criminal history."

{¶ 43} In *State v. W.J.,* 10th Dist. Franklin No. 14AP-457, 2015-Ohio-2353, ¶ 51, the court held that "[w]hen defense counsel elicits testimony regarding a defendant's prior criminal history, the defendant cannot then use the evidence he elicited as grounds for a mistrial." The *W.J.* Court also noted that the witness's "statement was vague and did not reference any specific crime that W.J. committed." *Id.* at ¶ 52. *See also State v. Payne*, 8th Dist. Cuyahoga No. 105965, 2018-Ohio-1399, ¶ 18 ("where a witness makes an isolated reference to a defendant's criminal history and there is no showing that the defendant suffered material prejudice, a mistrial is not warranted.").

{¶ 44} Given the nature of the charges against Quinn, including failure to comply, and the evidence presented that he was being apprehended by the Northern Ohio Violent Fugitive Task Force, to which defense counsel lodged no objections, we cannot say that this isolated comment by Det. Carpenter during his cross-examination was prejudicial to Quinn. Accordingly, his third assignment of error is overruled.

### D. Evidence Rule 801(D)(2)(e) — William Shields's Statements to Detective Caruso

{¶ 45} In his fourth and final assignment of error, Quinn argues that the "court erred in permitting William Shields's statement to be introduced pursuant to Evid.R. 801(D)(2)(E)." This evidence rule, which governs admissions by party-opponents, provides that a statement is not hearsay if it "is offered against a party and is * * * a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy upon independent proof of the conspiracy."

Evid.R. 801(D)(2)(e). Conspiracy is defined in R.C. 2923.01(A)(1), in part, as follows: "No person, with purpose to commit * * *kidnapping [or] robbery * * shall * * * [w]ith another person or persons, plan or aid in planning the commission of any of the specified offenses."

{¶ 46} For a statement to be admissible under Evid.R. 801(D)(2)(e), the proponent must make a prima facie showing of a conspiracy. *State v. Carter*, 72 Ohio St.3d 545, 651 N.E.2d 965 (1995). "A prima facie case is made out where the evidence introduced is sufficient to support, but not compel, a particular conclusion * * *." *State v. Trice*, 8th Dist. Cuyahoga No. 89933, 2008-Ohio-2930, ¶ 14.

{¶ 47} In the instant case, Euclid Police Detective Mike Caruso ("Det. Caruso") testified that on February 21, 2019, Gibson picked Shields out of a "six-pack photo array" as one of the men who robbed him. Det. Caruso and other law enforcement agents executed a warrant to search Shields's home, which resulted in Shields's arrest. Approximately one week later, Shields made a statement to Det. Caruso. Shields's statement was videotaped and played for the jury in Quinn's trial. According to the state, Shields told Det. Caruso that he "was also the victim of a robbery, that he and Mr. Gibson were robbed and zip tied and duct taped together and that Mr. Shields does not know the identity of anyone who planned or orchestrated the robbery * * *."

{¶ 48} Defense counsel objected, arguing that Shields's statements "violates [the] confrontation clause right under the Sixth Amendment and it would be impermissible hearsay." Quinn further argues that the state failed to make a prima

facie showing of a conspiracy to qualify as an exception to hearsay under Evid.R. 801(B)(2)(e).

{¶ 49} At trial, Gibson testified that Shields, who he knew as "Tuffy," set him up on February 21, 2019. According to Gibson, he and Tuffy arranged to meet that day because Tuffy owed him $300 from a drug transaction. When Gibson met Tuffy at the agreed upon location, Tuffy and two other men with guns robbed and kidnapped Gibson.

{¶ 50} Cell phone records introduced into evidence showed that Shields contacted Gibson and then Quinn on February 21, 2019, just prior to the commission of the crimes at issue. The general location of Quinn's cell phone matched the general location of Gibson's cell phone "between the hours of 5:22 p.m. and 7:14 p.m." on February 21, 2019. DNA found on the zip ties used to bind Gibson was consistent with Quinn's DNA profile.

{¶ 51} Upon review, we find that the state made a prima facie showing that Shields and Quinn participated in a conspiracy to kidnap and rob Gibson. Furthermore, we find that Shields's statement to Det. Caruso that Shields was also "robbed and zip tied and duct taped," and he did not know the identity of the perpetrators was made during the course, and in furtherance, of the conspiracy. In *State v. Braun*, 8th Dist. Cuyahoga No. 91131, 2009-Ohio-4875, ¶ 109, this court held that a "conspiracy does not necessarily end with the commission of the crime. A statement made by a co-conspirator after the crime may be admissible under Evid.R. 801(D)(2)(e) if it was made in an effort to conceal the crime." In following

*Braun*, we find that the trial court acted within its discretion when it ruled that Shields's statement was an admission by a co-conspirator and, thus, admissible at trial. Accordingly, Quinn's fourth assignment of error is overruled.

{¶ 52} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

LISA B. FORBES, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
EILEEN T. GALLAGHER, J., CONCUR